IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 22-11273-A

_____

UNITED STATES OF AMERICA

Appellee,

vs.

JAVIER SANCHEZ MENDOZA, JR.

Appellant.

_____

DIRECT APPEAL FROM A CONVICTION
IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA

_____

# BRIEF OF APPELLANT

_____

Scott G. Reddock
Scott G. Reddock Attorney at Law,
LLC
Georgia Bar No. 476162
111 West Court St. Suite B
Hinesville, GA 31313
912.332.7077
reddgeg@aol.com
Attorney for Appellant

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,  )
                            )
          Appellee,     )
                            )   No.  22-11273-A
Vs.                       )
                            )
JAVIER SANCHEZ        )
MENDOZA, JR.,          )
                            )
         Appellant.    )

## **CERTIFICATE OF INTERESTED PERSONS**

COMES NOW appellant Javier Sanchez Mendoza, Jr., and files his certificate of interested persons pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1.  The following is a complete list of all persons and entities known to have an interest in the outcome of this particular case or appeal:

     A&P Resources, LLC

     Blackerby, Steven G.

     Cheesbro, Hon. Benjamin W.

     Davids, Justin G.

     Estes, David H.

     Gilluly, Jr., E. Gregory

C-1 of 3

<u>United States v. Mendoza</u>
No. 22-11273-A

Groover, Tania D.

Hall, Hon. J. Randal

Hilltop Packing, LLC

King, Charles

Kings Berry Farm

Knoche, Karl I.

McGauley, Neal

Mendoza, Daniel

Mendoza, Jr., Javier Sanchez

Mendoza, Veronica

Reddock, Scott G.

Roque, Ana

Sneed, Hon. Julie S. (Middle District of Florida)

Wood, Hon. Lisa Godbey

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

<u>United States v. Mendoza</u>
No. 22-11273-A

Respectfully submitted this 19th day of September, 2022.

/s/ Scott G. Reddock_____
Scott G. Reddock Attorney at Law, LLC
Georgia Bar No. 476162
111 West Court St. Suite B

Hinesville, GA 31313
912.332.7077
reddgeg@aol.com
Attorney for Appellant

# TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS** . . . . . . . . . . . . . . . . . . . . . . . C-1

**TABLE OF CONTENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

**TABLE OF CITATIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iii

**STATEMENT REGARDING ORAL ARGUMENT** . . . . . . . . . . . . . . . . . . . . .v

**STATEMENT OF SUBJECT-MATTER AND APPELLATE**

    **JURISDICTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**STATEMENT OF THE ISSUE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**STATEMENT OF THE CASE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    1.    Course of proceedings and disposition in the court below . . . . . . . . 2

    2.    Statement of the facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        A. General Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        B.  Mendoza's History of Interactions with Jane Doe . . . . . . . . . 4

        C. Post-Arrest Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        D. Evidence Received by the District Court at

            Mendoza's Sentencing Hearing Related to

            Mendoza's Kidnapping of Jan Doe on

            November 4, 2019 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            i. Testimony of Special Agent Julio Lopez . . . . . . . . . . . . . . 10

      ii. Testimony of Jane Doe . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      iii. Testimony of Detective Jeremy Lynn Stagner . . . . . . . . . 11

    E.  The District Court's Application of the Sentencing

        Guidelines at Mendoza's Sentencing Hearing . . . . . . . . . . . 12

  3.     Statement of the standard of review . . . . . . . . . . . . . . . . . . . . . . . 13

**SUMMARY OF THE ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**ARGUMENT AND CITATION TO AUTHORITY** . . . . . . . . . . . . . . . . . . . . 15

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**CERTIFICATE OF COMPLIANCE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**CERTIFICATE OF SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## TABLE OF CITATIONS

**<u>Cases</u>**

<u>United States v. Amedeo</u>, 370 F.3d 1305, 1312 (11th Cir.2004) . . . . . . . . . . . . . 14

<u>United States v. Driver</u>, 274 Fed.Appx. 277 (4th Cir. 2008) . . . . . . . . . . . . . . . . 18

<u>United States v. Dumpson</u>, 70 F.3d 1268 (5th Cir. 1995) . . . . . . . . . . . . . . . . . 18

<u>United States v. Hansley</u>, 54 F.3d 709, 715 (11th Cir.1995) . . . . . . . . . . . . . . . 14

<u>United States v. Lewis</u>, 115 F.3d 1531 (11th Cir. 1997) . . . . . . . . . . . . . . . . . . 18

<u>United States v. Olano</u>, 507 U.S. 725, 734 (1993) . . . . . . . . . . . . . . . . . . . . . . . 14

<u>United States v. Rodriguez</u>, 398 F.3d 1291, 1298 (11th Cir.2005) . . . . . . . . . . . 14

<u>United States v. Stevenson</u>, 68 F.3d 1292, 1294 (11th Cir.1995) . . . . . . . . . . . . 14

**<u>Statutes</u>**

18 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1-3

18 U.S.C § 1589(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,16

18 U.S.C. § 1591 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 1591(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 1591(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 1591(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 1594(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1,3,15

iii

18 U.S.C. § 2241(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17,19

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3742 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## **Other**

Fed. R. App. P. 4(b)(1)(A)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. App. P. 32(a)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Fed. R. App. P. 32(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Fed. R. App. P. 32(a)(7)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Fed. R. App. P. 32(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

U.S.S.G. § 2A3.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,13,15,16,19

U.S.S.G. § 2A3.1(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

U.S.S.G. § 2A3.1(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,17

U.S.S.G. § 2A3.1(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . .2,8-9,15,17-21

U.S.S.G. § 2A3.1 Cmt. N. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

U.S.S.G. § 3A1.1(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

U.S.S.G. § 1B1.1 Cmt. N. 1(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

U.S.S.G. § 2H4.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,16-17

U.S.S.G. § 2H4.1(b)(4)(B) . . . . . . . . . . . . . . . . . . . . . . . . 8,12,16,17,19

iv

U.S.S.G. § 2H4.1 Cmt. N. 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

v

## STATEMENT REGARDING ORAL ARGUMENT

Appellant does not request oral argument because he believes that the error of the district court is readily evident from the record.

## STATEMENT OF SUBJECT-MATTER
## AND APPELLATE JURISDICTION

The United States Attorney, Southern District of Georgia, filed a single-count Information against Appellant Javier Sanchez Mendoza on August 12, 2021, for the offense of conspiracy to engage in forced labor in violation of 18 U.S.C. §§ 1594(b) and 2. [Doc 1][1]  On August 16, 2021, Mendoza pleaded guilty to this count pursuant to a plea agreement. [Doc 10]  Mendoza was sentenced on March 30, 2022. [Doc 23]

By final written judgment entered on April 8, 2022, the district court sentenced Mendoza to 360 months' imprisonment. [Doc 26]  Mendoza filed a notice of appeal on April 13, 2022. [Doc 30]  This notice of appeal is timely because Mendoza filed it within 14 days of the entry of the written judgment. See Fed. R. App. 4(b)(1)(A)(i).

Since the count of conviction states a violation of the laws of the United States, the district court had jurisdiction pursuant to 18 U.S.C. §3231.  This Court has jurisdiction over the appeal under 28 U.S.C. §1291 and 18 U.S.C. §3742.

---

[1] Pursuant to 11th Cir. R. 28-5, references to the record in a brief must be to document number and page number.  This brief cites to transcripts by the document number reflected on the docket sheet and the page number assigned by the court reporter.

1

## STATEMENT OF THE ISSUE

Did the district court err by applying a sentencing enhancement under United States Sentencing Guideline § 2A3.1(b)(5) for abduction of a victim of sexual abuse when no act of sexual abuse occurred in association with the act of abduction?

## STATEMENT OF THE CASE

### 1.   Course of proceedings and disposition in the court below.

In September 2020, Mendoza was indicted by a grand jury in the Southern District of Georgia on one count of sex trafficking by force, fraud, and coercion, in violation of 18 U.S.C. § 1591(a)(1), 18 U.S.C. § 1591(a)(2), 18 U.S.C. § 1591(b)(1) and 18 U.S.C. § 2 (2:20CR00049).  [Presentence Investigation Report ("PSI") ¶1]  This charge originated from an investigation into H-2A visa petitions submitted to obtain agricultural workers for farms in southeastern Georgia.  [PSI ¶9]  Mendoza had been made responsible by Charles King, owner of Kings Berry Farm in Waycross, Georgia, for providing and overseeing workers for these farms. [PSI ¶¶10-11] These workers, once they entered the country, were not paid, housed, or provided for as specified in the H-2A petitions. [PSI ¶18] Many of these workers were from Mexico.  One individual in particular, referred to as "Jane Doe" throughout the record, was a female from Mexico that Mendoza had recruited

using a H-2A visa petition. [PSI ¶16] Once Jane Doe had arrived in Georgia, Mendoza had her stay with him at his residence and subjected her to repeated instances of physical and sexual abuse. [PSI ¶¶16-17]

In August 2021, the United States Attorney, Southern District of Georgia, filed a one-count Information (2:21CR00034) charging Mendoza with conspiracy to engage in forced labor, in violation of 18 U.S.C. §1594(b) and 18 § U.S.C. 2. [Doc 1]  Mendoza pled guilty to that charge pursuant to a plea agreement.  [Doc 8] Mendoza was sentenced on March 30, 2022, to 360 months imprisonment.  [Doc 23]  As part of the plea agreement, which the district court accepted, the previous indicted charge was dismissed.  [Doc 23]  Mendoza is currently incarcerated.

2.    **Statement of the facts.**

   A. General Background

This case arose from a federal investigation, beginning in November 2018, into the submission of fraudulent H-2A visa petitions in order to recruit foreign agricultural field workers from Mexico and El Salvador to work at various farms throughout Georgia. [PSI ¶5]  In the course of this investigation, it was discovered that Mendoza had been hired by Kings Berry Farms in Waycross, Georgia, to provide and oversee H-2A workers recruited to work on Kings Berry Farms.  [PSI ¶11]  It was further determined that Mendoza was requiring H-2A workers to

3

relinquish their passports upon entry into the United States, not paying the workers their full, contracted wages, and requiring the workers to live in crowded residences, often without electricity or water. [PSI ¶18] Mendoza would threaten to call immigration officials if the workers complained or absconded. [PSI ¶18] Mendoza would occasionally sell a worker to another employer for $1,500. [PSI ¶18]

In September 2018, a group of 38 workers entered the United States association with one of Mendoza's fraudulent H-2A petitions. [PSI ¶16] One of these individuals who entered the United States as part of that group was a citizen of Mexico, an adult female identified in the record as "Jane Doe" or "Jane Doe 12." [PSI ¶16] She will hereafter be referred to as "Jane Doe."

B. Mendoza's History of Interactions with Jane Doe

Jane Doe testified at Mendoza's sentencing that she was introduced to Mendoza, and learned of an opportunity to work in the United States, through an acquaintance in her town. [Doc 46-Pg 68] This acquaintance provided Mendoza's phone number to Jane Doe, who contacted Mendoza about getting "a spot" among workers getting work visas to enter the United States. [Doc 46-Pg 68] Whereas Mendoza had instructed workers to pay a lawyer in Mexico $2,500 to obtain the

4

visa, he only charged Jane Doe $200 for entry into the United States, as he "took an interest in her."  [PSI ¶16]  Mendoza expressed this "interest" through text messages he sent to Jane Doe while she was still in Mexico.  [Doc 46-Pg 76]  In these text messages, Mendoza also suggested that if Jane Doe did not reciprocate this interest, she would not come to the United States.  [Doc 46-Pgs 76-77]  Jane Doe first met Mendoza in person when she arrived in Douglas, Georgia, with 37 other workers.  [Doc 46-Pg 72]  At that time, Mendoza began separating the workers into different groups to be sent to different locations, including to different states.  [Doc 46-Pg 73]  Jane Doe was separated and brought to Mendoza's residence, where she was joined at some point by four other workers from her town in Mexico (later sent by Mendoza to North Carolina).  [Doc 46-Pgs 73-74]  On the day of her arrival, after being brought to Mendoza's residence, Mendoza raped Jane Doe.  [Doc 46-Pg 77]  Jane Doe did perform some work on a blueberry farm packing pine straw and writing out checks to the workers, but was never paid for any work she did.  [Doc 46-Pg 74]  Jane Doe stated that Mendoza regularly physically abused her by hitting her in the head.  [Doc 46-Pg 78]  Jane Doe recounted one incident in which Mendoza beat her with a piece of wood for not working fast enough packing pine straw.  [Doc 46-Pg 75] She also recounted another incident in which Mendoza beat her in front of some children when she

5

took the children to get food in Mendoza's vehicle.  [Doc 46-Pgs 74-75]  Jane Doe

recounted that Mendoza raped her on numerous occasions.  [Doc 46-Pgs 77-78]

During one incident, Mendoza took her to the courthouse in Baxley, Georgia,

where he made her sign papers written in English she did not understand.  [Doc

46-Pgs 78-79]  Afterward, Mendoza told Jane Doe that they were now married.

[Doc 46-Pgs 78-79] Based on this incident, Jane Doe believed for over a year that

she was married to Mendoza.  [Doc 46-Pgs 78-79]

     In August 2019, Jane Doe was able to escape from Mendoza after he

attempted to rape her.  [Doc 46-Pgs 81-83]  She solicited aid from two of the other

workers.  [Doc 46-Pgs 81-83]  Mendoza then chased Jane Doe, along with the

other two workers, down the street with a knife.  [Doc 46-Pgs 81-83]  Jane Doe

then called the police using one of the other workers' phones.  [Doc 46-Pg 82]

Police arrived, and arrested Mendoza.  [Doc 46-Pg 83]  Mendoza was subsequently

charged with three counts of aggravated assault related to his incident.  [PSI ¶47]

Mendoza spent two months in jail before posting bond, and during this time Jane

Doe went to stay with friends in Brunswick.  [Doc 46-Pgs 83-84]

     On November 4, 2019, Mendoza arrived at the friends' house in a gray truck

and abducted Jane Doe from the front yard while brandishing a knife.  [Doc 46-Pgs

83-84]  Jane Doe was placed in the back seat of the truck, with Mendoza driving

and Mendoza's mother in the front passenger seat.  [Doc 46-Pgs 85-87]  At some point on the way back to his residence in Jesup, Georgia, Mendoza parked the vehicle in a field.  [Doc 46-Pgs 85-86]

Meanwhile, the kidnapping had been reported to Glynn County police.  [PSI ¶12]  The FBI was subsequently notified and were able to track Jane Doe's cellular phone location to Mendoza's residence.  [PSI ¶13]  When police arrived at Mendoza's residence, they observed him outside the residence.  [PSI ¶13]  Police placed Mendoza under arrest, and shortly thereafter located Jane Doe inside the residence with Mendoza's mother.  [PSI ¶13]  Of note, the police also discovered at Mendoza's residence a shrine or altar with a statue of "Santa Muerte" (translated "Holy Death" or "Saint of Death")[2] surrounded by lit candles, with what was later determined to be Jane Doe's blood on the scythe held by the statue, part of her hair in front of the statue, and a picture of Jane Doe lying face down underneath the statue.  [PSI ¶15]

## C. POST-ARREST PROCEEDINGS

Mendoza was initially indicted on a charge of sex trafficking by force, fraud, or coercion, but he later pled to an information, pursuant to a plea agreement, on a charge of conspiracy to engage in forced labor.  [PSI ¶¶ 1-5]  A preliminary

---

[2] During Mendoza's sentencing hearing, Agent Julio Lopez testified at length concerning the cultural significance and symbolism of "Santa Muerte."  [See Doc 46-Pgs 24-25]

presentence report was prepared and issued to Mendoza's counsel for review with Mendoza.

In the presentence report, the United States Probation Office, in determining Mendoza's applicable offense level, first applied the guideline governing a violation of 18 USC § 1589, USSG § 2H4.1. [PSI ¶31] Then, the probation office applied the cross-reference provision contained in USSG § 2H4.1(b)(4)(B) based on Mendoza's sexual abuse of Jane Doe. [PSI ¶34] This in turn led to the application of USSG § 2A3.1, resulting in a base offense level of 30. [PSI ¶34] Several enhancements were applied, resulting in an adjusted offense level of 45. [PSI ¶38] One of the enhancements applied under §2A3.1 was a four level increase under §2A3.1(b)(5) "if the victim was abducted." [PSI ¶ 34] The offense level of 45 was reduced by three levels to 42 based on Mendoza's acceptance of responsibility which, with his criminal history category of I, resulted in a sentencing guideline range of 360 months-life. [PSI ¶¶ 40-42]

In response to the preliminary PSI, Mendoza objected to the application of the cross-reference to §2A3.1. [PSI Addendum] This objection was based on Mendoza's assertion that his sexual relationship with Jane Doe was consensual and that, even if Mendoza had raped Jane Doe, the rapes did not facilitate the offense of conviction, and therefore §2A3.1 was not applicable. [PSI Addendum] Mendoza

8

also objected to the application of a two level increase under USSG § 3A1.1(b)(1) if the defendant "knew or should have known the victims of the offense were vulnerable victims."  [PSI Addendum]

It is worth noting that the PSI did not contain any allegations of sexual abuse related to the November 4th kidnapping. [See PSI ¶¶12-15]  According to the PSI, Jane Doe indicated that "[Mendoza] continued to rape [Jane Doe] until [Mendoza] was arrested for aggravated assault in August 2019."  [PSI ¶17]  Similarly, the PSI did not contain any allegations of sexual abuse related to another alleged kidnapping that took place when Mendoza took four of the workers to South Carolina in order to meet up with a "sicario." [3]  [See PSI ¶¶23-25]  Also of note is the fact that Mendoza did not object to the application of the 4-level "abduction" enhancement under §2A3.1(b)(5) either during the period provided for making written objections to the PSI or during the sentencing hearing.

Because of Mendoza's objections, the district court heard evidence to resolve these issues at Mendoza's sentencing hearing on March 30, 2022.  [Doc 46] Relevant to this appeal, the district court heard evidence at Mendoza's sentencing related to Mendoza's kidnapping of Jane Doe on November 4, 2019.  [Doc 46]

---

[3] Because no allegations were made, or evidence offered, that any of the individuals kidnapped during the "sicario" incident were ever sexually abused by Mendoza, this other kidnapping incident is not discussed further in this appeal.

9

**D. <u>EVIDENCE RECEIVED BY THE DISTRICT COURT AT MENDOZA'S SENTENCING HEARING RELATED TO MENDOZA'S KIDNAPPING OF JANE DOE ON NOVEMBER 4, 2019.</u>**

**<u>i. TESTIMONY OF SPECIAL AGENT JULIO LOPEZ</u>**

First, Special Agent Julio Lopez testified concerning the information he received from Jane Doe when he interviewed her about the November 4th kidnapping. According to Lopez, Jane Joe had expressed her belief upon being kidnapped by Mendoza that "[Mendoza] wanted to kill her because she had tried to escape again" and "because she knew so much about his organization[.]" [Doc 46 -Pg. 39]

Lopez also testified concerning the medical report prepared after Jane Doe had been examined by a medical professional following the November 4th kidnapping. [Doc 46-Government Exhibit 18] According to Lopez, the medical report stated that Jane Doe suffered from a concussion, "raccoon eyes," pain in the neck, and "other issues." [Doc 46-Pg 56]

**<u>ii. TESTIMONY OF JANE DOE</u>**

Jane Doe testified concerning the November 4th kidnapping:

[Mendoza] arrived [at my friend's trailer in Brunswick] in a gray pickup truck. He followed me. His face was covered. He had a knife in his hand. And he placed me in the truck by force. But if I didn't comply, that he would stab me with the knife.

10

[Doc 46-Pg 84]

[Mendoza] started telling me why did I leave him.  And I told him that I just did not want him.  I never wanted to be with him.  And he told me that because I had left him he was going to kill me.  And then he spoke to Salvador to ask him what they were going to do with me.  Salvador told him to - - to kill me.

[Doc 46-Pg 85]

[Mendoza] continued talking with the lawyer.  And then he went to a field of pines and a cemetery.  And that's where he began beating me.

[Doc 46-Pg 85]

[Mendoza hit me on] my head, on the back, on my face, in my stomach.  He told me that if I did not stay with him he was going to kill my son in Mexico.

[Doc 46-Pg 86]

[After Mendoza took me back to his home in Jesup he] continued threatening me.  He beat me.  He cut my hair.  He wanted to cut me to get some blood from me and place it on an altar [to Santa Muerte] that he had.

[Doc 46-Pg 87]

[After Mendoza took my blood he] continued threatening me and talking until finally the police arrived.

[Doc 46-Pg 87]

### iii. TESTIMONY OF DETECTIVE JEREMY LYNN STAGNER

Detective Jeremy Lynn Stagner testified during the sentencing hearing concerning the police response to the November 4, 2019, kidnapping.  Det. Stagner testified that by using the "ping" signal from Jane Does' phone, police were able to

track the phone's location to a mobile home in Jesup, Georgia.  [Doc 46-Pg 107]

After briefly surveilling this property, Stagner and other officers observed

Mendoza appear from the rear of the house, on his cell phone and smoking a

cigarette.  [Doc 46-Pg 108]  They could identify Mendoza from booking photos

taken of him from his August arrest.  [Doc 46-Pg 109]  When Mendoza attempted

to walk away from police toward his truck, police approached him and placed him

under arrest.  [Doc 46-Pg 109]  Police then intercepted Mendoza's mother, Anna

Mendoza, attempting to leave the trailer with Jane Doe.  [Doc 46-Pg 110]

### E. District Court's Application of the Guidelines At Sentencing

During the sentencing hearing, the district court made the following ruling

on the cross-reference provision contained in § 2H4.1(b)(4)(B):

> Moving on to the offense level computation objections, the one set
> forth is Objection 2 to Paragraph 34 and the very consequential usage of the
> cross-reference for this offense, specifically I find that pursuant to guideline
> provision 2H4.1(4)(b) that there were felony offenses that were committed
> during the commission of and in connection with the involuntary servitude
> offense.
>
> There are different felonies to choose from unfortunately for the
> victims.  The kidnapping, where she was snatched out of the yard while she
> was taking care of the children and held at knifepoint in the car and then
> dragged in with the Santa Muerte shrine in that trailer and held, I find that
> would support the cross-reference.
>
>  I also find that the rape after rape after rape after rape that occurred
> much closer in time to when she was originally put in the servitude, that
> would also count.  I find that the kidnapping itself would count.
>
> All of those felonies I find merit the cross-reference and the increase
> as set forth in 2A3.1(b)(1).  It is appropriate.  He used force against her in

12

raping her.

       I find that it had the potential of facilitating the forced labor and actually that the forced labor had the potential of facilitating the rape and the kidnapping. It actually runs both ways in this case.

       To the extent -- and I believe it is hotly contested by the defendant that he ever raped her. It is his contention that she did all that voluntarily, and I watched her very closely, and having seen her testify and watched her, listened to her tone, her delivery, the content, her body language, I would find by any standard of proof that she's telling the truth.

       As a result I find that the rapes did occur. The kidnapping did occur. The aggravated assault did occur and that it does certainly support the cross-reference, and as a result I overrule the objection to Paragraph 34, which brings us to the final objection . . . .

[Doc 46-Pgs 154-155]

The district court, in ruling against Mendoza's objections, applied the cross-reference to § 2A3.1 as well as all of the enhancements outlined in the PSI to find an offense level of 42 and criminal history category of 1. [Doc 46-Pg 157] The resulting guideline range found by the district court was 360 months-life. [Doc 46-Pg 157]

The district court sentenced Mendoza to 360 months imprisonment, the low end of the guideline range. [Doc 46-Pg 175]

Mendoza timely filed a notice of appeal. [Doc 30]

**3.**    **<u>Statement of the standard of review.</u>**

Mendoza appeals the application of a sentencing guideline provision to undisputed facts established at sentencing. However, Mendoza did not object to

13

the application of this sentencing guideline provision during or prior to sentencing.

This Court reviews *de novo* the district court's interpretation and application of sentencing guideline provisions. United States v. Amedeo, 370 F.3d 1305, 1312 (11th Cir.2004).

However, this Court "consider[s] sentence objections raised for the first time on appeal under the plain error doctrine to avoid manifest injustice." United States v. Hansley, 54 F.3d 709, 715 (11th Cir.1995) (internal quotation marks omitted). "For the Court to correct plain error: (1) there must be error; (2) the error must be plain; and (3) the error must affect substantial rights." United States v. Stevenson, 68 F.3d 1292, 1294 (11th Cir.1995).  If the first three conditions are met, this Court may exercise its discretion to "notice a forfeited error, but only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.2005) (internal quotation marks omitted). " 'Plain' is synonymous with 'clear' or, equivalently, 'obvious.' " United States v. Olano, 507 U.S. 725, 734, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993). For an error to affect substantial rights, it "must have affected the outcome of the district court proceedings." Id. at 734, 113 S.Ct. at 1778.

**SUMMARY OF THE ARGUMENT**

United States Sentencing Guideline § 2A3.1 is applied to obtain a sentencing guideline range in instances where an act of criminal sexual abuse has been established at sentencing by a preponderance of the evidence.  Under § 2A3.1(b)(5), a four level increase in the offense level is warranted if it was established at sentencing that the "victim [of the criminal sexual abuse] was abducted."  In this case, a four level increase was applied to Mendoza's offense level based on an abduction of victim Jane Doe on November 4, 2019.  However, it was never alleged at sentencing, much less proven or made a finding of the district court, that Mendoza committed any act of criminal sexual abuse in connection with the abduction of Jane Doe on November 4, 2019.  Therefore, the § 2A3.1(b)(5) 4-level offense level enhancement should not have been applied to Mendoza in determining the appropriate guideline range.  In doing so, the district court plainly erred, and this error affected Mendoza's substantial rights.

**ARGUMENT AND CITATION OF AUTHORITY**

**1.    Did the district court err in applying § 2A3.1(b)(5) of the Federal Sentencing Guidelines when determining Mendoza's appropriate sentencing guideline range?**

The guideline applicable to violations of both 18 U.S.C. § 1594(b) and 18

15

U.S.C. § 1589(b) (conspiracy to engage in forced labor) is U.S.S.G. § 2H4.1. Under U.S.S.G. § 2H4.1(b)(4)(B), however, "if any other felony offense was committed during the commission of, or in connection with, the peonage or involuntary servitude offense, increase to the greater of . . . 2 plus the offense level from the offense guideline applicable to that other offense, but in no event greater than level 43." In the Commentary for this guideline, under Application Note 2, "any other felony offense" is defined as "any conduct that constitutes a felony offense under federal, state, or local law . . . ."

Based on this cross-reference, the U.S. Probation Office, in the PSI, sought to apply another guideline in determining Mendoza's guideline range, U.S.S.G. § 2A3.1, based on allegations of aggravated sexual abuse against one of his victims, defined under 18 U.S.C. § 2241(a) as "knowingly caus[ing] another person to engage in a sexual act by (1) using force against that other person; or (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping." [PSI ¶34] It therefore appears that, in the district court's view, a violation of 18 U.S.C. § 2241(a) is the "other felony offense" referenced in § 2H4.1(b)(4)(B) triggering application of the cross reference to § 2A3.1, as the district court adopted that conclusion of the PSI at sentencing. [Doc 46-Pg 157]

16

U.S.S.G. § 2A3.1 includes enhancements connected to the offense of aggravated sexual abuse. One of these enhancements is U.S.S.G. § 2A3.1(b)(5) which states that the offense level is increased by 4-levels if the "victim was abducted."

The cross-reference to § 2A3.1 from § 2H4.1 resulted in Mendoza having an offense level of 40, consisting of a base offense level of 30 pursuant to U.S.S.G. § 2A3.1(a)(2); a 4-level increase pursuant to U.S.S.G. § 2A3.1(b)(1) because the offense involved conduct as described in 2241(a) or (b); a 2-level increase pursuant to § 2H4.1(b)(4)(B); and a 4-level increase pursuant to U.S.S.G. § 2A3.1(b)(5) because the "victim was abducted." [PSI ¶34]

Application Note 1 under U.S.S.G. § 2A3.1 states that "'Abducted' . . . [has] the meaning given . . . in Application Note 1 of the Commentary to § 1B1.1 (Application Instructions)." [§ 2A3.1 cmt. n. 1] Application Note 1 of U.S.S.G. § 1B1.1 in turn provides:

> (A) "*Abducted*" means that a victim was forced to accompany an offender to a different location. For example, a bank robber's forcing a bank teller from the bank into a getaway car would constitute an abduction.

[U.S.S.G. §1B1.1 cmt. n. 1(A)]

In every instance in which the § 2A3.1(b)(5) enhancement has been scrutinized in this Circuit or in the other circuit courts, the abduction of a victim

17

has facilitated an act of sexual abuse against that victim.  In almost every instance, the act of abduction commenced immediately prior to the act of sexual abuse.  See e.g. United States v. Lewis, 115 F.3d 1531 (11th Cir. 1997) (where the defendant repeatedly raped the victim in the act of kidnapping and transporting the victim across state lines); United States v. Dumpson, 70 F.3d 1268 (5th Cir. 1995) (where the victims were not allowed to exit defendant's vehicle upon request and were driven to remote federal land in the desert where they were sexually assaulted); but see United States v. Driver, 274 Fed.Appx. 277 (4th Cir. 2008) (where the abduction occurred after the victim attempted to escape from the defendant following a sexual assault).  The common thread among all of the cases upholding the application of the enhancement under § 2A3.1(b)(5) is temporal proximity between the abduction of the victim and the act of sexual abuse of the victim.

This temporal proximity between the acts of abduction and sexual abuse suggests that an abduction does not occur for purposes of applying § 2A3.1(b)(5) when the act of abduction is merely interspersed with a long series of other abuses, including repeated instances of sexual abuse.  What § 2A3.1(b)(5) presupposes, instead, is that some act of aggravated sexual abuse occurred that involved an abduction to effectuate that abuse, hence abduction as an enhancement to a sexual abuse offense.  Importantly, Mendoza can locate no case-law from any circuit that

18

supports the application of § 2A3.1(b)(5) when the abduction lacks an associated act of sexual abuse.

In this case, the district court made findings of fact at sentencing that Mendoza had committed multiple acts of aggravated sexual abuse against Jane Doe as defined under 18 U.S.C. § 2241(a). [Doc 46-Pgs 154-155] Hence, the district court appropriately applied the cross-reference to § 2A3.1. [Doc 46-Pgs 154-155]

In addition, the district court found, and none of the parties disputed, that a kidnapping or abduction occurred on November 4, 2019, over three months after Jane Doe had escaped from Mendoza when he had attempted to sexually assault her. At the sentencing hearing, the district court, in ruling that the § 2H4.1(4)(b) cross-reference to § 2A3.1 was appropriate, referenced the "kidnapping, where [Jane Doe] was snatched out of the yard while she was taking care of the children and held at knifepoint in the car and then dragged in with the Santa Muerte shrine in that trailer and held. . ." is clearly referring to the kidnapping on November 4, 2019. [Doc 46-Pg 154] Furthermore, the district court at sentencing stated: "I find . . . that the forced labor had the potential of facilitating the rape and the kidnapping." [Doc 46-Pg 154] Finally, in summarizing its findings on the application of the cross-reference to § 2A3.1, the district court stated that "[a]s a

19

result I find that the rapes did occur. The kidnapping did occur." [Doc 46-Pg 155] All of this suggests that the district court found that a single kidnapping occurred in relation to Jane Doe, and that that kidnapping was the one that occurred on November 4, 2019. It follows that, since the November 4, 2019, kidnapping was the only instance cited by the district court of an "abduction" of Jane Doe by Mendoza, the application of the "abduction" enhancement under § 2A3.1(b)(5) must be based on the facts and circumstances of that kidnapping.

However, that abduction was not associated with any act of sexual abuse. The established, uncontested facts are that on November 4, 2019, Mendoza abducted Jane Doe from her friend's yard in Brunswick while brandishing a knife; forced Jane Doe into the back seat of his vehicle; parked in a cemetery, at which time he climbed into the back seat with Jane Doe and physically assaulted her; took her back to his residence in Jesup; took her to a room at his residence where an altar to Santa Muerte was set up; made verbal threats to Jane Doe; and took blood and hair from Jane Doe as an offering to Santa Muerte. [Doc 46-Pgs 184-187]

At no time on November 4, 2019, following his abduction of Jane Doe, did Mendoza have sexual contact with her, nor was any evidence presented that he intended to have sexual contact with her at the time of the abduction.[4] While Jane

_____

[4]Notably, it was the Government's contention at sentencing that Mendoza was actually planning to murder Jane Doe on November 4, 2019, hence Mendoza's offerings to Santa Muerte. [Doc 46-Pgs 168-169]

Doe testified that Mendoza had beat her after dragging her back to his vehicle, she never claimed during her testimony that Mendoza sexually abused her on November 4, 2019.  Furthermore, the medical records tendered during the sentencing hearing do not report any evidence of sexual assault.

Because no evidence was presented, nor do the uncontroverted facts suggest, that Mendoza sexually abused Jane Doe at any point after he abducted her on November 4, 2019, the district court clearly erred when it applied the "abduction" enhancement under § 2A3.1(b)(5) to Mendoza's guideline range.

Furthermore, this error affects Mendoza's "substantial rights."  Without this enhancement, Mendoza's guideline range would have been 235-293 months, approximately 5 1/2-10 1/2 years lower than the 360-month sentence he received.

## CONCLUSION

The district court clearly and plainly erred when it applied the four level enhancement under § 2A3.1(b)(5) in determining Mendoza's sentencing guideline range, substantially increasing the amount of time in imprisonment he was facing. For this reason, Mendoza respectfully requests that this Court reverse the district court's application of the federal sentencing guidelines to Mendoza and remand this case to the district court for resentencing.

Respectfully submitted this 21st day of September, 2022.

/s/ Scott G. Reddock
Scott Reddock Attorney at Law, LLC
Georgia Bar No. 476162
111 West Court St. Suite B
Hinesville, GA 31313
Tel: 912.332.7077
Fax: 912.332.7179
reddgeg@aol.com
Attorney for Appellant

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-column limitations of Fed. R. App. P. 32 (a)(7)(B) because this brief contains 5,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14 point font.

Respectfully submitted this 21st day of September, 2022.

/s/ Scott G. Reddock
Scott G. Reddock Attorney at Law, LLC
Georgia Bar No. 476162
111 West Court St. Suite B
Hinesville, GA 31313
912.332.7077
reddgeg@aol.com
Attorney for Appellant

## CERTIFICATE OF SERVICE

Today I served a copy of this Brief of the Appellant on the government by filing it on the Court's CM/ECF portal, which generates a notice of electronic filing that is delivered to all counsel of record, along with a link to retrieve a file-stamped copy of the document that I filed.

This 21st day of September, 2022.

/s/ Scott G. Reddock
Scott Reddock Attorney at Law, LLC
Georgia Bar No. 476162
111 West Court St. Suite B
Hinesville, GA 31313
Tel: 912.332.7077
Fax: 912.332.7179
reddgeg@aol.com
Attorney for Appellant